1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10   GEORGE W. GREEN,                ) Case No. CV 14-02043 AN
                                     )
11            Plaintiff,             ) MEMORANDUM AND ORDER
                                     )
12        v.                         )
                                     )
13   CAROLYN W. COLVIN, ACTING       )
     COMMISSIONER OF THE SOCIAL      )
14   SECURITY ADMINISTRATION,        )
                                     )
15            Defendant.             )
     _____)

16

17          Pursuant to the Court's Case Management Order, the parties have filed the

18   Administrative Record ("AR") and a Joint Stipulation ("JS") raising two disputed issues.

19   The parties have consented to proceed before the Magistrate Judge. The Court has

20   carefully reviewed the parties' respective contentions in conjunction with the AR. This

21   matter is now ready for decision.

22                                    **Issue #1**

23          Plaintiff contends the Administrative Law Judge ("ALJ") erred when she found

24   Plaintiff does not have a medically determinable or severe mental impairment,

25   independent of his substance abuse. (JS 6-12; AR 21-22); *see* 20 C.F.R. § 416.920(b)(ii).

26          The ALJ found that Plaintiff has a significant history of polysubstance abuse. (AR

27   21-22.) Plaintiff admitted to periods in which he had used alcohol, marijuana, cocaine,

28   heroin, and PCP. (AR 21, 353, 385.) Although Plaintiff later denied marijuana use and

expressed interest in participating in a substance abuse program, the ALJ noted that "[t]he record contains insufficient evidence the claimant enrolled in a substance abuse program." (AR 21, 322, 339, 391, 397.) Consequently, the ALJ found that Plaintiff's polysubstance abuse was a nonsevere impairment. (AR 21.)

In addition to his history of substance abuse, Plaintiff was diagnosed with major depressive disorder with psychotic features, psychotic disorder NOS, and mood disorder with antisocial traits. (AR 22, 206, 271, 322, 338, 373, 398, 405.) Plaintiff reported feelings of depression, auditory hallucinations, paranoia, sleep disturbance, irritability, and social withdrawal. (AR 322, 325, 334, 338, 341, 351, 353, 359, 363, 391, 393, 398, 399, 407.) In June 2010, Plaintiff was hospitalized on a 72-hour hold when he reported having paranoid thoughts and a desire to harm others. (AR 22, 204-07.) In July 2010, Plaintiff began receiving treatment and medication for his mental condition at the Augustus F. Hawkins Mental Health Center. (AR 22, 320-400, 405.) In May 2012, Plaintiff's treating psychologist, Steven Tarver, Ph.D., assessed Plaintiff's ability to work in a psychiatric/psychological impairment questionnaire. (AR 405-19.) Dr. Tarver opined that Plaintiff's chronic challenges with depression, agitation, irritability, hallucinations, and delusions would likely impair his ability to work a regular job on a sustained basis and would cause him to be absent from work more than three times a month. (AR 419.) Dr. Tarver found that Plaintiff's ability to perform activities of mental functioning was "markedly limited" in ten categories, "moderately limited" in two categories, and "mildly limited" in five categories.[1/]  (AR 411, 413, 415.)

---

[1/]      Specifically, Dr. Tarver found that Plaintiff was "markedly limited" in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, sustain ordinary routine without supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and set realistic
(continued...)

1        In the decision, the ALJ found that Plaintiff, "does not have a medically

2   determinable mental impairment separate from his polysubstance abuse disorder." (AR

3   22.) In reaching this determination, the ALJ relied on the opinion of the non-examining

4   medical expert who testified at Plaintiff's hearing, Glenn E. Griffin, Ph.D. (AR 22.) Dr.

5   Griffin considered Plaintiff's history of polysubstance use to be Plaintiff's primary

6   mental diagnosis. (AR 39.) Although Plaintiff had been diagnosed with major depressive

7   disorder with psychotic features, Dr. Griffin asserted that the condition was not well

8   established or medically determinable, independent of Plaintiff's substance abuse. (AR

9   39.) Dr. Griffin found significant a February 2011 progress note indicating that Plaintiff

10  had withdrawn an earlier application for benefits because his records showed that he had

11  been using marijuana. (AR 51, 339.) Dr. Griffin suggested that "the sudden emergence"

12  of Plaintiff's reported psychotic symptoms could have been related to his claim for

13  benefits. (AR 51.) Dr. Griffin criticized Dr. Tarver's assessment of Plaintiff's limitations,

14  as it did not reflect a full integration of Plaintiff's substance abuse history or clinical

15  record. (AR 48-49, 407.)

16       The ALJ erred by improperly considering the impact of Plaintiff's substance abuse

17  at the severity stage of the sequential analysis. *See Bustamante v. Massanari*, 262 F.3d

18  949, 955 (9th Cir. 2001) (When a claimant has a history of drug or alcohol abuse, the ALJ

19  "must first conduct the five-step inquiry without separating out the impact of alcoholism

20  or drug addiction."); *see* Contract with America Advancement Act of 1996, Pub. L. No.

21  104-121, 110 Stat. 847 (March 29, 1996), (providing that an "individual shall not be

22  considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if

23  alcoholism or drug addiction would . . . be a contributing factor material to the

24  _____

25  [1]/ (...continued)
    goals or make plans independently. (AR 411, 413, 415.) Dr. Tarver found that Plaintiff
26  was "moderately limited" in the ability to interact appropriately with the general public,
    ask simple questions or request assistance. (AR 413.) Dr. Tarver found that Plaintiff was
27  "mildly limited" in the ability to remember locations and work-like procedures,
    understand and remember one or two-step instructions, carry out simple one or two-step
28  instructions, make simple work related decisions, and travel to unfamiliar places or use
    public transportation. (AR 411, 413, 415.)

1  Commissioner's determination that the individual is disabled."); 42 U.S.C. §
2  423(d)(2)(C); *see also* Social Security Ruling 13-2p, 2013 WL 621536 (Feb. 20, 2013).
3  The ALJ should have assessed the severity of Plaintiff's mental impairment and
4  proceeded with the five-step inquiry without attempting to determine the impact of
5  Plaintiff's substance abuse. *See Bustamante*, 262 F.3d at 955. Only if the ALJ had found
6  Plaintiff disabled under the five-step inquiry should the ALJ have evaluated whether
7  Plaintiff would be disabled in the absence of substance abuse. *Id.* The Commissioner
8  argues that because the ALJ did not find Plaintiff disabled, there was no need to evaluate
9  whether drug or alcohol abuse was a contributing factor of disability. (JS 16-18.) The
10 Commissioner's argument lacks merit, as it fails to acknowledge that the ALJ
11 prematurely ended her analysis by considering the impact of Plaintiff's substance abuse
12 at step two of the sequential analysis. *See Bustamante*, 262 F.3d at 953-55. The ALJ's
13 error warrants remand in this case. *See id.* at 956 ("we reverse and remand with
14 instructions that the ALJ proceed with step three (and four and five, if necessary) of the
15 disability determination without attempting to separate out the impact of Bustamante's
16 alcohol abuse").

17     Furthermore, the ALJ erred in rejecting Dr. Tarver's opinion in favor of the
18 opinion of the non-examining medical expert, Dr. Griffin. (AR 21-23.) A non-examining
19 physician's opinion cannot by itself constitute substantial evidence to support the ALJ's
20 rejection of an examining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31
21 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is
22 controverted, it can be rejected only with specific and legitimate reasons supported by
23 substantial evidence in the record). While a nonexamining medical expert's opinion may
24 constitute substantial evidence when it is consistent with other independent evidence, the
25 ALJ here failed to point to such independent evidence. *See Morgan v. Comm'r of Soc.*
26 *Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

27     The Commissioner argues that the opinion of the examining psychologist, Rosa
28 Colonna, Ph.D., supports the ALJ's determination that Plaintiff does not have a medically

Page 4

1    determinable mental impairment. (JS 18-20; AR 267-72); *see Tonapetyan v. Halter*, 242

2    F.3d 1144, 1149 (9th Cir. 2001). Dr. Colonna diagnosed Plaintiff with mood disorder

3    NOS, suspected substance abuse, and found that Plaintiff had poorly organized thoughts,

4    moderately diminished memory recall, moderately diminished attention and

5    concentration, and an IQ in the borderline to low-average range. (AR 268-71.) The ALJ

6    gave great weight to Dr. Colonna's opinion. (AR 26.) Although Dr. Colonna's findings

7    differ from Dr. Tarver's assessment, Dr. Colonna's opinion is inconsistent with the ALJ's

8    finding that Plaintiff has no medically determinable mental impairment. *See* 20 C.F.R.

9    § 416.908 (A medically determinable impairment is one that results "from anatomical,

10   physiological, or psychological abnormalities which can be shown by medically

11   acceptable clinical and laboratory diagnostic techniques."), 416.920a(b)(1).    Dr.

12   Colonna's diagnosis and RFC assessment of moderate limitations indicate that Plaintiff

13   has a medically determinable mental impairment sufficient to satisfy the de minimis

14   threshold at step two. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("[a]n

15   impairment or combination of impairments may be found 'not severe only if the evidence

16   establishes a slight abnormality that has no more than a minimal effect on an individual's

17   ability to work.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); 20

18   C.F.R. § 416.921 (explaining that a severe impairment is an impairment which

19   significantly limits a claimant's "ability to do basic work activities."). The Commissioner

20   further argues that the treatment record contains little evidence of clinical or objective

21   findings to substantiate Dr. Tarver's  assessment of Plaintiff's limitations. (JS 18-19.)

22   However, as discussed above, doctors who examined Plaintiff found significant mental

23   problems (i.e., major depression with psychological features and mood disorder), and at

24   least moderate functional limitations in several areas. These findings are supported by

25   Plaintiff's treatment records and mental health counseling notes. (AR 70-71, 268-71, 405-

26   19.) The evidence as a whole supports Plaintiff's claim that he suffers from a medically

27   determinable and severe mental impairment. *See Webb*, 433 F.3d at 686; *Smolen*, 80 F.3d

28   at 1290; *see also* 20 C.F.R. § 416.908.

1    Accordingly, remand is warranted on Issue #1.

2                                    **Issue #2**

3         Plaintiff contends that the ALJ failed to fully and properly evaluate Plaintiff's

4    ability to lift and carry in light of Plaintiff's left shoulder condition. (JS 21-25.)

5         Plaintiff has a history of left shoulder complaints. A May 2007 MRI of Plaintiff's

6    left shoulder showed a tear of the supraspinatus tendon. (AR 215.) In August 2008,

7    Plaintiff was given medication for left shoulder pain and a referral to an orthopedic clinic.

8    (AR 215.) An examination in December 2009 revealed supraspinatus atrophy and

9    weakness, cross-arm pain, mildly positive Hawkins test, and crepitus. (AR 214.) Plaintiff

10   complained of left shoulder pain, numbness and difficulty holding his arm up for long

11   periods. (AR 214.) In January 2010, an MRI of Plaintiff's left shoulder showed a full

12   thickness tear of the supraspinatus tendon with musculotendinous retraction, infraspinatus

13   intrasubstance tears, and degenerative changes in the acromioclavicular joint. (AR 218.)

14   Although Plaintiff was referred multiple times for shoulder surgery, there is no indication

15   that Plaintiff ever underwent such surgery. (AR 213, 215; JS 22.)

16        In May 2011, Sohail Afra, M.D., conducted a complete internal medicine

17   evaluation of Plaintiff. (AR 260-65.) No medical records were available for review at the

18   evaluation. (AR 260.) Dr. Afra reported that the range of motion of Plaintiff's left

19   shoulder was slow and painful, but full range of motion was achieved, and Plaintiff's

20   flexion, extension, adduction, external rotation, and internal rotation were within normal

21   limits. (AR 262.) Plaintiff's motor strength in the upper extremities and range of motion

22   in the elbow joints, wrists joints, and hands were also within normal limits. (AR 263-64.)

23   Plaintiff's grip strength in the left hand was measured at "35/30/30 pounds" of force,

24   which was normal. (AR 264.) After discussing Plaintiff's medical conditions (i.e., history

25   of BPH (benign prostatic hyperplasia), hypertension, and pain in the back, knee, and first

26   left toe), Dr. Afra assessed Plaintiff with the ability to push, pull, lift and carry 25 pounds

27   frequently and 50 pounds occasionally, stand and walk 2 hours in an 8-hour workday, and

28   sit 6 hours in an 8-hour workday. (AR 264.) Dr. Afra also found that Plaintiff could

                                      Page 6

benefit from using a cane for ambulation and should avoid walking on uneven terrain, climbing ladders, and working at heights. (AR 264-65.)

Non-examining state agency physician E. Christian, M.D. reviewed Plaintiff's medical record, including Plaintiff's January 2010 MRI report showing a tear in Plaintiff's left rotator cuff. (AR 66-69, 218.) Dr. Christian agreed with the lift, carry, stand, walk and sit restrictions found by Dr. Afra, and also assessed a limitation of occasional pushing and pulling with the lower extremities. (AR 66-69.)

At Plaintiff's hearing, the non-examining medical expert, Harvey Alpern, M.D., opined that Plaintiff was able to lift 10 pounds frequently and 20 pounds occasionally, sit 6 hours in an 8-hour day, lift overhead occasionally with the left upper extremity, and stand and walk 2 hours in an 8-hour day, but was precluded from climbing ropes and ladders. (AR 38.) Dr. Alpern stated that these restrictions accounted for Plaintiff's left shoulder condition, including Plaintiff's claims that he has difficulty holding out his left arm and lifting and carrying more than 10 to 15 pounds. (AR 42-43, 46-47.) When asked about the tear in Plaintiff's left shoulder, Dr. Alpern responded that Plaintiff would be able to lift and carry 20 pounds, as he had a grip strength of 30 to 35 pounds. (AR 47-48.) Dr. Alpern explained that Plaintiff would be able to use his left forearm and wrist to lift and move things, while keeping his left shoulder in a fixed position. (AR 47-48, 262.) Dr. Alpern also testified that weakness in Plaintiff's left shoulder would cause weakness in Plaintiff's left arm only when his arm was extended. (AR 48.)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ accorded "great weight" to the opinion of the testifying medical expert, Dr. Alpern. (AR 23, 25.) The ALJ found that Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds occasionally and reach overhead with the left upper extremity occasionally.[2] (AR 23.) The ALJ considered the opinion of the examining physician, Dr. Afra, as consistent

---

[2]   The ALJ further found that Plaintiff was capable of standing and walking 2 hours in an 8-hour workday, sitting 6 hours in an 8-hour workday, but should avoid climbing ropes or ladders. (AR 23.)

with Plaintiff's RFC, except for Dr. Afra's finding that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally. (AR 23, 25.) The ALJ imposed greater lifting and carrying restrictions as Dr. Afra had not been made fully aware of Plaintiff's left shoulder impairment. (AR 23, 25.) Similarly, the ALJ discounted the opinion of the state agency physician, Dr. Christian, to the extent it conflicted with Plaintiff's RFC for lifting and carrying. (AR 23, 25-26.)

Plaintiff argues that the ALJ erred in relying on Dr. Alpern's opinion in assessing Plaintiff's shoulder impairment and ability to lift and carry. (JS 21-25.) Plaintiff asserts that Dr. Alpern made a "medically unfounded inference" that Plaintiff's grip strength with the left hand (35/30/30 pounds) indicates he is able to lift and carry 10 pounds frequently and 20 pounds occasionally. (JS 24; AR 47-48, 262.) The Commissioner argues that Dr. Alpern's opinion was consistent with the medical evidence, and that the opinions of Dr. Afra and Dr. Christian provided further support for the ALJ's RFC assessment. (JS 26-28.)

The ALJ's conclusion that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally was a rational interpretation of the medical evidence and supported by substantial evidence. As evaluated by Dr. Afra, Plaintiff had normal range of motion, motor strength, and grip strength in the upper extremities, and normal, albeit slowed and painful, range of motion in the left shoulder. (AR 262-64.) Although the ALJ ultimately chose to impose greater lifting and carrying restrictions than those assessed by Dr. Afra, Dr. Afra's opinion, which was based on independent clinical findings, constituted substantial evidence in support of the ALJ's decision. *See Tonapetyan*, 242 F.3d at 1149. Indeed, Plaintiff acknowledges there are no medical opinions in the record assessing greater lifting or carrying restrictions than those assessed by the ALJ. (JS 24.) While Plaintiff contends that the ALJ should have accorded less weight to Dr. Alpern's opinion because he relied on Plaintiff's grip strength to support the lifting and carrying limitations, it was the province of the ALJ to assess the medical evidence, provide an interpretation thereof, and resolve any conflicts or ambiguities that existed. *See Reddick*

Page 8

*v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ has the responsibility of resolving ambiguities and conflicts in the medical evidence). The ALJ's reliance on Dr. Alpern's opinion and consideration of the medical evidence was reasonable, supported by the record, and entitled to deference. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1989) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.").

Accordingly, Plaintiff is not entitled to a reversal or remand based upon Issue #2.

## ORDER

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds a remand is appropriate because there are unresolved issues that, when properly resolved, may ultimately still lead to a not disabled finding. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotation marks and citation omitted). *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning

1  of the Social Security Act."). Accordingly, the present case is remanded for further
2  proceedings consistent with this Memorandum and Order.

3       IT IS THEREFORE ORDERED that a judgment be entered reversing the
4  Commissioner's final decision and remanding the case so the ALJ may make further
5  findings consistent with this Memorandum and Order.

6
7
8  DATED:  November 21, 2014                    _____
9                                               ARTHUR NAKAZATO
                                                 UNITED STATES MAGISTRATE JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28